United States District Court
Southern District of Texas
**ENTERED**
March 09, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| PRO VALLEY FOODS, L.L.C., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 7:19-CV-106 |
| § | |
| BASSETT & WALKER § | |
| INTERNATIONAL, INC., § | |
| § | |
| Defendant. § | |

# ORDER & OPINION

The Court now considers "Opposed Renewed Motion to Dismiss for *Forum Non Conveniens*"[1] (hereafter, "renewed motion to dismiss for *forum non conveniens*") filed by Bassett & Walker International, Inc. (hereafter, "Defendant"), the response in opposition[2] filed by Pro Valley Foods, L.L.C. (hereafter, "Plaintiff"), and the reply filed by Defendant.[3] The Court also considers the "Opposed Motion for Protective Order Regarding Plaintiff's Discovery Requests and Rule 30(B)(6) Deposition Notice and Motion for Stay of Discovery"[4] (hereafter, "motion for protective order") filed by Defendant, Plaintiff's response in opposition,[5] and Defendant's reply.[6] The Court further considers Plaintiff's motion to compel discovery[7] and

---

[1] Dkt. No. 24.
[2] Dkt. No. 27.
[3] Dkt. No. 29.
[4] Dkt. No. 26.
[5] Dkt. No. 28.
[6] Dkt. No. 30.
[7] Dkt. No. 31.

Defendant's response.[8] Finally, the Court considers the letter[9] and unopposed motion for extension of time[10] filed by Plaintiff.

After considering the motions, record, and relevant authorities, the Court **DENIES** Defendant's renewed motion to dismiss for *forum non conveniens*[11] and **DENIES AS MOOT** Defendant's motion for protective order.[12] The Court further **GRANTS** Plaintiff's motion to compel discovery[13] and Plaintiff's motion for extension of time.[14]

### I.  BACKGROUND

This is a contract dispute concerning Plaintiff's purchase of seafood from Defendant. Plaintiff is a food distributor with its principal place of business is Hidalgo County, Texas.[15] Defendant is a seafood distributor with its principal place of business in Ontario, Canada.[16] In May 2018, Plaintiff's General Manager Ruben Hinojosa Jr. (hereafter, "Hinojosa") and Defendant's commodity trader, Jose Barajas (hereafter, "Barajas") entered into negotiations regarding Plaintiff's purchasing of Basa, a type of fish, from Defendant.[17]

As the Court noted at the parties' initial pretrial and scheduling conference,[18] the parties' initial pleadings do not provide a clear description of the negotiations. The parties agree that Hinojosa and Barajas entered into negotiations in May 2018 and that Plaintiff agreed to purchase

---

[8] Dkt. No. 32.
[9] Dkt. No. 33.
[10] Dkt. No. 34.
[11] Dkt. No. 24.
[12] Dkt. No. 26.
[13] Dkt. No. 31.
[14] Dkt. No. 34.
[15] *See* Dkt. No. 14 (Plaintiff's Amended Certificate of Interested Parties); Dkt. No. 1-4 at 2, ¶ 5.
[16] *See* Dkt. No. 12 (Defendant's Amended Certificate of Interested Parties); Dkt. No. 7-1. In contrast, Plaintiff alleges in its first amended state court petition that Defendant has its principal place of business in Wilmington, Delaware. Dkt. No. 1-4 at 1, ¶ 4. Nonetheless, the parties are properly diverse.
[17] *See* Dkt. No. 1-4; *see also* Dkt. No. 7-1(Declaration of Ruben Hinojosa, Jr.); Dkt. No. 17-1 (Declaration of Jose Barajas).
[18] Dkt. No. 21 at 6, ll. 18–21 (Transcript of the initial pretrial and scheduling conference).

from Defendant more than 100,000 pounds of Basa to be delivered to McAllen, Texas.[19] However, Plaintiff maintains that the parties entered into oral agreements as to two separate orders of fish that did not include choice of law or forum selection clauses.[20] In contrast, while Defendant agrees that much of the parties' negotiating was primarily oral or over email, Defendant maintains that Plaintiff received a Sales Confirmation as to each of the two orders of Basa that included binding choice of law and forum selection clauses.[21] The forum selection clauses held that disputes between the parties be adjudicated in Defendant's home country of Canada.[22]

The parties reached an agreement as to two separate orders of fish, to be shipped in two different shipments – one in August 2018 and one in February 2019.[23] Defendant arranged for the fish to be shipped from a plant in Vietnam to Mexico, and then to Plaintiff in McAllen.[24] Plaintiff claims that after the first shipment, "relying on the representations of [Defendant] that the fish was in an edible, saleable, and usable condition in the United States, [Plaintiff] began distributing and selling the fish products throughout Texas."[25] However, after the second shipment arrived in February 2019, Plaintiff claims the United States Department of Agriculture ("USDA") "found that the shipments of fish products by [Defendant] to [Plaintiff] was unlawful for sale in the United States because the fish had been procured from a delisted facility in

---

[19] Dkt. No. 1-4 at 2, ¶ 8. There is a discrepancy in the amount of fish purchased by Plaintiff. In its first amended state court petition, Plaintiff alleges it purchased from Defendant 55,000 pounds of Basa for $70,000. *Id*. In contrast, Plaintiff's General Manager Ruben Hinojosa Jr. states in an affidavit that the agreement between the parties was for 162,800 pounds of Basa, but only 110,000 was delivered to Plaintiff for a price of $180,000. Dkt. No. 7-1 at 2–3, ¶¶ 6–10.
[20] Dkt. No. 27 at 5.
[21] *See generally* Dkt. Nos. 4, 16–17, 24.
[22] Dkt. No. 24-2 at 36–37 (Defendant's Sales Confirmations).
[23] Dkt. No. 7 at 2. Defendant does not comment on the delivery of the fish to Plaintiff. Plaintiff alleges that 110,000 pounds of fish was shipped in August 2018, while 53,000 pounds was shipped in February 2019. This discrepancy in the amount of product ordered and shipped, discussed elsewhere in this Order, is present throughout the parties' filings. For example, in Plaintiff's original state court petition, Plaintiff alleges the parties entered into an agreement for 55,000 pounds of Basa fish for $70,000. Dkt. No. 1-4 at 2, ¶ 8.
[24] Dkt. No. 7 at 2*; see also* Dkt. No. 24-2 at 36–37.
[25] *Id*. at 3.

Vietnam."[26] Plaintiff maintains that because the shipments originated from a facility in Vietnam that was removed from the USDA's approved list of vendors, the fish could not be consumed, sold, or otherwise used in the United States.[27] Accordingly, Plaintiff alleges that "the federal government either confiscated the fish products or required [Plaintiff] to destroy them."[28]

On March 27, 2019, Plaintiff filed its complaint[29] in the 332nd Judicial District Court of Hidalgo County, Texas, bringing claims of fraud, specifically under Section 32.46 of the Texas Penal Code and Section 41.008(c)(11) of the Texas Civil Practices & Remedies Code.[30] Plaintiff also brings claims under the Texas Deceptive Trade Practices Consumer-Protection Act ("DTPA") Sections 17.46(b).[31] Plaintiff seeks damages, including exemplary and treble damages under the DTPA, and attorneys' fees.

Defendant subsequently removed to this Court on the basis of diversity jurisdiction.[32] Shortly thereafter, Defendant filed its first motion to dismiss for *forum non conveniens*.[33] Plaintiff filed a response to Defendant's motion to dismiss[34] and a motion to strike Defendant's evidence.[35] Defendant, after the time for filing a reply brief had passed, filed two amended motions to dismiss for *forum non conveniens*.[36]

---

[26] *Id.*
[27] *Id.* (citing to Dkt. No. 7-1); Dkt. No. 1-4 at 2–3.
[28] Dkt. No. 27 at 4.
[29] *See* Dkt. No. 1-2. Plaintiff filed an initial complaint and later amended. *See* Dkt. No. 1-4. The Court now considers Plaintiff's first amended state court petition.
[30] Dkt. No. 1-4 at 3, ¶ 16. Defendant attaches only Plaintiff's amended state court petition to its notice of removal.
[31] *Id.* at 4, ¶ 20.
[32] Dkt. No. 1.
[33] Dkt. No. 4.
[34] Dkt. No. 7.
[35] Dkt. No. 8. Defendant amended its first motion to dismiss for *forum non conveniens* after Plaintiff objected to its initial motion on the grounds that Defendant based its motion on the affidavit of Bastidas Zambrano, the Vice President of Defendant. *See* Dkt. No. 8; *see also* Dkt. No. 4-1. (Declaration of Bastidas Zambrano). Plaintiff argued that Zambrano did not participate in the negotiations and did not have personal knowledge of the parties' transaction; therefore, his affidavit was incompetent evidence pursuant to Federal Rule of Civil Procedure 62. *See* Dkt. No. 7. The Court did not rule on the issue of whether the Zambrano affidavit was competent evidence, as Defendant thereafter filed two amended motions without seeking leave of the Court. Defendant attached to both subsequent amendments the Declaration of Jose Barajas, its General Manager who participated in the negotiations with Hinojosa. Dkt. Nos. 16–17. The Court discussed this at the parties' initial pretrial and scheduling conference.

Defendant argued in its first motion to dismiss for *forum non conveniens* and its two subsequent amendments[37] of the same motion that the two Sales Confirmations containing Canadian choice of law and forum selection clauses, dated May 15, 2018 and May 24, 2018, were agreed to by the parties and were the "only two documents in [Defendant's] files indicating sales in May 2018."[38] Barajas attested that the Sales Confirmations were created and sent by Barajas to Hinojosa "at the time of the events between [Defendant] and [Plaintiff]," and that the Sales Confirmations were provided to Plaintiff on July 3, 2018, prior to delivery of the fish.[39] In support of this initial argument, Defendant attached a July 3, 2018 email from Barajas to Hinojosa, which Defendant alleges included both Sales Confirmations as attachments.[40] Defendant offered no evidence of Plaintiff receiving the Sales Confirmations at the time of the initial negotiations in May 2018. Yet, Defendant argued that the choice of law and forum selection clauses were agreed to by Plaintiff because Plaintiff received the Sales Confirmations at the time of negotiations in May 2018 and on July 3, 2018.[41] Defendant further argued that Plaintiff and Defendant had a course of dealing that established that the clauses in the Sales Confirmations govern their agreements.[42]

---

As the Court denied Defendant's motion to dismiss for *forum non conveniens* at the conference, the Court need not consider Plaintiff's objections to the Zambrano affidavit. Dkt. No. 8.

[36] Dkt. No. 16 (first amended motion to dismiss); Dkt. No. 17 (second amended motion to dismiss).
[37] Dkt. Nos. 4, 16–17.
[38] Dkt. No. 4 at 2, ¶ 7.
[39] Dkt. No. 17-1 at 2, ¶ 5.
[40] *Id.* at 5–8. Barajas' email states that "invoices" are attached. Thus, it appears Defendant argues it attached the Sales Confirmations as "invoices" to the email.
[41] *See id.*
[42] In support of this argument, Defendant attached the affidavit of Jose Barajas to its second amended motion to dismiss for *forum non conveniens* in which Barajas states "[i]t is [Defendant's] business practice to issue Sales Confirmations to a business customer prior to finalizing any commodity transactions. All [Defendant's] orders are subject to final confirmation." Dkt. No. 17-1 at 1, ¶ 3.

In response, Plaintiff argued that it had not signed any Sales Confirmation or agreed to a choice of law or forum selection clause.[43] Plaintiff further argued that the Sales Confirmations do not constitute valid written contracts; rather, the parties reached a prior, binding oral agreement.[44] Thus, Plaintiff argued no valid forum selection clause exists, and that in the absence of a valid forum selection clause, private and public interest factors weigh in favor of adjudicating this dispute in Plaintiff's chosen forum, Hidalgo County, Texas.[45] In support, Plaintiff attached the signed Declaration of Hinojosa, in which he describes the negotiations as follows:

> All these negotiations were conducted either by phone or email while I was in the office in McAllen. There were no written contracts exchanged between the parties; while there were some emails exchanged, the majority of the negotiations and the final agreement were oral. I never signed any written document and know that no one else at [Plaintiff] did either.[46]

At the parties' initial pretrial and scheduling conference, the Court orally denied Defendant's second amended motion to dismiss for *forum non conveniens* on the grounds that (1) the agreement between the parties is governed by the United Nations Convention on Contracts for the International Sale of Goods ("CISG"); (2) the oral agreement between Plaintiff and Defendant was reached in May 2018; (3) the Sales Confirmations were sent after the agreement was reached and are not binding contracts; and (4) the forum selection clause and the choice of law clause contained therein do not apply.[47] The Court noted that the July 3, 2018 email

---

[43] Dkt. No. 7 at 4–5.
[44] *Id.* at 4.
[45] *See id.* at 8-11.
[46] Dkt. No. 7-1 at 2, ¶ 3.
[47] Dkt. No. 19; *see also* Dkt. No. 21. Defendant's first and second amended motions to dismiss for forum non conveniens were not properly before the Court, as Defendant amended its motion twice without requesting proper leave from the Court or permission from Plaintiff pursuant to Federal Rule of Civil Procedure 15(a). However, for the purposes of considering whether to grant Defendant's motion, the Court considered all arguments made by Defendant regarding forum non conveniens and denied the second amended motion to dismiss for forum non conveniens at the initial pretrial and scheduling conference. *See* Dkt. No. 19. In its Order memorializing its decision at the initial pretrial and scheduling conference, the Court also denied as moot Defendant's original and first

correspondence between Barajas and Hinojosa, wherein Barajas states "the invoices are attached," referring to the Sales Confirmations, did not prompt Hinojosa to sign any additional agreement or imply that the Sales Confirmations were additional contracts.[48] The Court stated that "there is no evidence "that [the Sales Confirmations] [were] ever signed by Plaintiff, which . . . had Plaintiffs signed it and agreed to those terms, it would have amended the oral agreement."[49] Following its decision to deny Defendant's motion to dismiss, the Court set a scheduling order providing the following deadlines: February 8, 2020 for Plaintiff's expert designations, March 24, 2020 for Defendant's expert designations, a discovery deadline of May 29, 2020, a joint pretrial order deadline of August 11, 2020, and a final pretrial conference on September 21, 2020 at 9:00 a.m.[50]

On August 19, 2019, more than one month after the initial pretrial and scheduling conference, Defendant filed a renewed motion to dismiss for *forum non conveniens,* arguing that the case should be dismissed "based on additional evidence and arguments not included in its prior motions."[51] Defendant also filed its motion to stay discovery.[52] Plaintiff timely responded to both motions[53] and Defendant replied to both responses.[54] On October 14, 2019, Plaintiff filed its motion to compel discovery[55] and Defendant responded.[56] Finally, on February 3, 2020, Plaintiff filed a letter[57] inquiring with the Court as to the status of the pending motions. One day

---

amended motions to dismiss for *forum non conveniens*, as well as Plaintiff's motion to strike the evidence provided in Defendant's original and first amended motions to dismiss. Dkt. No. 19 at 2.
[48] Dkt. No. 21 at 4, ll. 14–24.
[49] *Id.* at 5, ll. 4–9.
[50] Dkt. No. 18.
[51] Dkt. No. 24 at 1.
[52] Dkt. No. 27.
[53] Dkt. Nos, 26–28.
[54] Dkt. Nos. 29–30.
[55] Dkt. No. 31.
[56] Dkt. No. 32.
[57] Dkt. No. 33.

later on February 4, 2020, Plaintiff filed its unopposed motion for extension of time,[58] requesting the Court extend the parties' scheduling deadlines in light of the pending motions. The Court now turns to its analysis.

## II. CAUTIONARY NOTE

As an initial matter, the Court first addresses the parties' noncompliance with the Federal Rules of Civil Procedure with regard to the instant filings. Rule 7(b)(2) of the Federal Rules of Civil Procedure provides that "[t]he rules governing captions and other matters of form in pleadings apply to motions and other papers."[59] Rule 10(b) in turn provides that "[a] party must state its claims or defenses *in numbered paragraphs*, each limited as far as practicable to a single set of circumstances."[60] There are no numbered paragraphs in any of the ten motions and responsive filings considered by this Order, hindering the Court's reference to the parties' arguments and evidence. The parties are cautioned that future submissions should contain consistently numbered paragraphs to properly comply with the rules. The Court now turns to Defendant's renewed motion to dismiss for *forum non conveniens*.

## III. RENEWED MOTION TO DISMISS FOR FORUM NON CONVENIENS

*a. Legal Standard*

The Court interprets Defendant's "renewed" motion as a motion for reconsideration. The Federal Rules of Civil Procedure do not explicitly recognize any motion for reconsideration. Nevertheless, courts within the Fifth Circuit "address such motions under Rules 54(b) for interlocutory orders, and under Rules 59 and 60 for final judgments."[61] The Fifth Circuit has

---

[58] Dkt. No. 34.
[59] FED. R. CIV. P. 7(b)(2).
[60] FED. R. CIV. P. 10(b) (emphasis added).
[61] *See e.g., Lexington Ins. Co. v. ACE Am. Ins. Co.*, 192 F. Supp. 3d 712 (S.D. Tex. 2016); *Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F.Supp.2d 550, 553 (N.D. Tex. 2009) (citing *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 347 (5th Cir.1991); *U.S. Bank Nat'l Assoc. v. Verizon Communications, Inc.*, Civ. A. No. 3:10–CV–1842–G,

explained that only the resolution of an entire adversarial proceeding is "final."[62] Necessarily then, the relevant Rule for purposes of this motion is Rule 54(b). Rule 54(b) states, in pertinent part, that:

> [A]ny order or other decisions, however designated, that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.[63]

"Whereas Rule 59(e) applies only to final judgments and does not permit consideration of arguments that could have been raised previously,"[64] Rule 54(b) applies to interlocutory judgments and provides district courts with discretion to "'reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'"[65] Reconsideration of an interlocutory decision pursuant to Rule 54(b) is available "under the standard 'as justice requires.'"[66]

### b. Legal Analysis

Defendant brings its renewed motion to dismiss for *forum non conveniens* on the grounds that it provides additional evidence not previously considered by the Court in Defendant's prior motions. In support of its renewed request, Defendant attaches the following additional exhibits: (1) a renewed Declaration of Jose Barajas, dated August 19, 2019;[67] (2) WhatsApp text messages

---

2012 WL 3034707, at *1 (N.D. Tex. July 25, 2012)); *see also Austin v. Kroger Texas, L.P.,* 864 F.3d 326, 336 (5th Cir. 2017).
[62] *Moody v. Seaside Lanes*, 825 F.2d 81, 85 & n.3 (5th Cir. 1987).
[63] FED. R. CIV. P. 54(b).
[64] *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018) (citing *Austin*, 864 F.3d at 336 (5th Cir. 2017)).
[65] *Austin*, 864 F.3d at 336 (5th Cir. 2017) (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990).
[66] *Contango Operators, Inc. v. United States*, 965 F. Supp. 2d 791, 800 (S.D. Tex. 2013), aff'd sub nom. *Contango Operators, Inc. v. Weeks Marine, Inc.*, 613 Fed. Appx. 281 (5th Cir. 2015).
[67] Dkt. No. 24-2 at 2–4.

between Hinojosa and Barajas, wherein the parties discuss the details of their negotiations;[68] (3) various emails[69] between Hinojosa and Barajas not previously provided to the Court, ranging from May 10, 2018[70] to June 20, 2018;[71] and (4) an email from a third party that manages Defendant's system[72] suggesting Hinojosa accessed a Sales Confirmation link at 11:26 a.m. on May 15, 2018.[73]

Defendant's renewed motion alleges the following timeline of events pertaining to the *first* shipment of fish, based on the additional evidence:

> In early May 2018, Hinojosa and Barajas discussed the possibility of [Plaintiff] placing an order for basa fish fillets from [Defendant]. As a result of these discussions, on May 10, 2018, Hinojosa sent Barajas a text message through a real-time internet communications application called WhatsApp offering to purchase the fillets for [Plaintiff]. Barajas responded to Hinojosa's text with a text of his own, stating that Barajas would send Hinojosa a confirmation and credit application, as they had discussed the possibility of [Plaintiff] purchasing the fillets from [Defendant] on credit. That same day, Hinojosa sent Barajas an email from Hinojosa's personal email account with the same purchase offer. Barajas responded to this email with an email to Hinojosa attaching [Defendant's] credit application and confirming the details of the transaction, including the requirement of a 10% prepayment with the balance due upon delivery. Barajas's email also stated that all orders are subject to "final confirmation" by [Defendant]. In a telephone conversation following the May 10, 2018 text messages and email, Barajas informed Hinojosa that [Defendant] would be unable to extend credit to [Plaintiff] and that [Plaintiff] would have to pay a down payment before shipment with the balance due after delivery. Barajas then entered the relevant details regarding the transaction into [Defendant's] tracking system, which assigned the transaction a reference number of BWI 34833.[74]

Importantly, Defendant further alleges that following the parties' aforementioned negotiations, Defendant's "system" sent an email to Hinojosa on May 15, 2018 containing a link to a final

---

[68] *Id.* at 8, 25–27.
[69] *Id.* at 10–12, 17, 22, 29, 34.
[70] *Id.* at 10.
[71] *Id.* at 34.
[72] Defendant provides little to no detail regarding who or what entity is responsible for determining that Hinojosa accessed the link on May 15, 2018 at 11:26 a.m. Rather, Barajas attests to the fact that a "third party" hired by Defendant looked into the time and date on which the link was accessed. Defendant attaches as email from this third party, Adrian Jones of "Knowledge 4 You." Dkt. No. 24-2 at 19.
[73] *Id.* at 19.
[74] Dkt. No. 24 at 3–4 (citing Dkt. Nos. 24-2–24-4) (internal citations omitted).

confirmation, or the Sales Confirmation, for Order Number 34833 which prompted Hinojosa to finalize the parties' agreement on Plaintiff's behalf.[75] This link allegedly contained the Sales Confirmation and Defendant's terms and conditions, including the Canadian forum selection clause. Defendant argues that web server log information, which Defendant attaches to its pleadings as an exhibit, evidences Hinojosa's accessing the link and "accepting" the Sales Confirmation and terms and conditions at 11:26 a.m. EDT on May 15, 2018.[76]

Similarly, Defendant's renewed motion alleges the following timeline of events pertaining to the *second* shipment of fish, based on the additional evidence:

> In addition, throughout this time, Hinojosa and Barajas were discussing the possibility of Pro Valley purchasing a second load of basa fillets from BWI. On May 22, 2018, after Barajas had already confirmed acceptance of the terms and conditions contained in Sales Confirmation 34833 as discussed above, Hinojosa sent Barajas another text message through WhatsApp confirming Pro Valley's interest in purchasing this second load. As with the prior transaction, Barajas entered the relevant details regarding this second transaction into BWI's tracking system, which assigned it a reference number of BWI 34858. In his May 25, 2018 email confirming the wire transfer in accordance with Sales Confirmation 34833, Hinojosa asked Barajas for a copy of the Sales Confirmation for transaction BWI 34858, which was the second load of fillets. Then, on June 4, 2018, Hinojosa sent another text message to Barajas via WhatsApp again requesting a copy of Sales Confirmation 34858. In response to Hinojosa's requests, on June 4, 2018, Barajas sent Hinojosa a copy of Sales Confirmation 34858. As with the prior transaction, Hinojosa did not object to the terms and conditions of Sales Confirmation 34858, and Pro Valley began performance in accordance with those terms when it wired the 10% prepayment to BWI on June 21, 2018. Finally, on June 20, 2018, Hinojosa wrote to Barajas noting that he had lost all of his emails that were associated with his @kanebeef email address at which he had received the prior sales confirmations. Hinojosa requested that Barajas send copies of BWI's Sales Confirmations 34833 and 34858 to his new @provalleyfoods address. In response, Barajas sent copies of the Sales Confirmations to Hinojosa on June 20, 2018. And on July 3, 2018, BWI again emailed copies of the Sales Confirmations to Hinojosa, all before the delivery of the fillets was complete.[77]

---

[75] *Id*. at 4.
[76] *Id*. (citing Dkt. No. 24-2 at 19).
[77] Dkt. No. 24 at 6 (citing Dkt. Nos. 24-2 at 7–13) (internal citations omitted).

Based on this timeline and the additional evidence provided to the Court, Defendant requests the Court dismiss the action for *forum non conveniens* based on its argument that the forum selection clauses contained in the Sales Confirmations are valid. Defendant argues as to the first shipment of fish that Hinojosa's May 10, 2018 WhatsApp message[78] acted as an offer to purchase the fish, and in response Barajas informed Plaintiff that the offer would not be accepted until Defendant issued a final confirmation.[79] Defendant argues that it made a counter-offer to Plaintiff in the form of the link containing the Sales Confirmation that was allegedly sent to Hinojosa on May 15, 2018.[80] Defendant alleges that under the CISG, Plaintiff accepted the Sales Confirmation counter-offer by not objecting to the additional terms and thereafter performing in accordance with the Sales Confirmation.[81]

As to the second shipment of fish, Defendant does not identify a date on which Hinojosa made Barajas an offer as it does with the first shipment. Rather, Defendant alleges that the parties were discussing the possibility of a second shipment during the time they were negotiating the first.[82] Defendant argues that "[o]n May 22, 2018, after Barajas had already confirmed acceptance of the terms and conditions contained in Sales Confirmation 34833 as discussed above, Hinojosa sent Barajas another text message through WhatsApp confirming Pro Valley's interest in purchasing this second load."[83] Defendant does not allege that a link was sent to Hinojosa confirming this second transaction. Rather, Defendant states that Hinojosa requested

---

[78] *Id.* at 8. In the May 10, 2018 WhatsApp message, Hinojosa states "Please book 1 load of 5/7 Basa, 100% net weight at $1.62 delivered McAllen, Tx". The Court notes that Defendant's WhatsApp exhibits are not fully translated in English, and as such the Court is unable to review the context of the conversations between Hinojosa and Barajas. *Id.* If exhibits are filed, both the Spanish original and translation shall be filed.
[79] *See id.* Barajas responded to Hinojosa's request, stating "I will send you the confirmation and credit application."
[80] *Id.*
[81] *See id.*
[82] *Id.* at 6.
[83] Dkt. No. 24 (citing Dkt. No. 24-2 at 24–25).

the second Sales Confirmation on May 25, 2018 and Barajas emailed a copy on June 4, 2018.[84] Thus, Defendant argues that the Sales Confirmation sent on June 4, 2018 acted as a counter-offer, which Plaintiff accepted pursuant to the CISG by failing to object to the additional terms and performing in accordance with the contract.[85]

Defendant proceeds to conflate its arguments regarding counter-offers and performance by asserting that "the *contracts* were not formed until Hinojosa, on behalf of [Plaintiff], accepted the terms of the Sales Confirmations by clicking on the email link, by failing to object to the terms and conditions of the Sales Confirmations after receipt of those documents, and by thereafter commencing performance in accordance with the terms of the Sales Confirmations."[86] With this statement, Defendant implies that both Sales Confirmations were sent through the link on May 15, 2018. This is improbable however, because the second Sales Confirmation is dated for May 24, 2018.[87] Moreover, Defendant itself suggests that Plaintiff received the Sales Confirmation for the second shipment on June 4, 2018.[88]

Finally, Defendant argues that pursuant to the Supreme Court's decision in *Atlantic Marine,* "[b]ecause [Defendant] has demonstrated that the forum selection clause is a valid part of its contracts, the burden shifts to [Plaintiff] to make a 'strong showing' in order to overcome the presumption of enforceability."[89]

Plaintiff proffers multiple arguments in response. First, Plaintiff argues that Defendant's "renewed" motion is procedurally improper pursuant to Rule 59(e), as Defendant has not pointed to an error made by the Court in its decision to deny the second amended motion to dismiss for

---

[84] *Id.* (citing Dkt. No. 24-2 at 24–27).
[85] *Id.*
[86] *Id.* at 9 (emphasis added).
[87] Dkt. No. 24-2 at 30.
[88] *Id.* at 6.
[89] *Id.* at 12 (citing *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49 (2013)).

*forum non conveniens*, and Defendant has not provided any additional evidence not previously available at the time the Court made its decision on this matter.[90] Second, Plaintiff argues that Defendant's renewed motion should be denied because Plaintiff did not sign or agree to the forum selection clauses.[91] Specifically, Plaintiff asserts that Defendant's claim that Defendant did not accept Plaintiff's offer prior to sending the Sales Confirmations is inaccurate, and even if the Sales Confirmations were considered counter-offers, Plaintiff's clicking a link containing those counter-offers does not constitute acceptance.[92] Third, Plaintiff argues that the *Atlantic Marine* analysis relied on by Defendant does not apply to tort or DTPA claims.[93] Finally, Plaintiff once again argues that if the forum selection clauses are valid, the private and public interest factors weigh in favor of adjudicating this dispute in Plaintiff's chosen forum, Hidalgo County, Texas.[94]

In reply, Defendant correctly argues that Rule 59(e) does not apply to the interlocutory reconsideration of an order denying a motion to dismiss.[95] Defendant further argues that the written documents cited to by Plaintiff "that supposedly 'confirm' that an oral agreement existed . . . materially changed the terms of the parties' alleged agreement, thereby becoming counter-offers under the terms of the CISG."[96] Finally, Defendant asserts that Plaintiff "ignores the case law recognizing that DTPA and fraud claims are subject to valid and enforceable forum selection clauses."[97]

---

[90] Dkt. No. 27 at 4–5.
[91] *Id.* at 5.
[92] *See id.* at 5–11.
[93] *Id.* at 11–13.
[94] *Id.* at 14–17.
[95] Dkt. No. 29 at 2–3.
[96] *Id.* at 1, 3–7.
[97] *Id.* at 1, 7–8.

The Court agrees with Plaintiff to the extent it argues that Defendant's renewed motion warrants denial. First, the Court recognizes that because Defendant moves for reconsideration of an interlocutory order rather than a final judgment, Defendant is not required to make new arguments or provide new evidence that was not previously available pursuant to the more stringent Rule 59(e) standard in order to qualify for reconsideration. However, pursuant to Rule 54(b), the Court has discretion to reconsider its interlocutory decision 'as justice requires.'"[98]

Here, while Rule 54(b) does not require that a party seeking reconsideration proffer new arguments or evidence, the Court finds that "justice requires" it to consider whether the new evidence proffered by Defendant was available at the time the Court denied Defendant's previous three motions to dismiss for *forum non conveniens*.

All evidence now offered as "additional" evidence has been available to Defendant since the onset of this case. Defendant filed three initial motions to dismiss for *forum non conveniens* and had multiple opportunities to proffer the "additional" evidence now provided in its *fourth* request for dismissal. As an initial matter, the Court notes that Defendant filed its initial motions to dismiss for *forum non conveniens* without providing even minimal evidence of the parties' negotiations. The exhibits now attached by Defendant in its renewed motion would be essential to the analysis of any contract dispute. As the Court stated at the parties' conference, the parties' initial pleadings contained "no definitive evidence. . .to that tell [the Court] when, in fact, the actual contract is formed."[99] All the while, this evidence was in Defendant's possession. Yet, after the Court's ruling on the issue, dozens of pages of evidence appear, accompanied by Defendant's new theory of the case and timeline of the facts. All of this information was available to Defendant prior to the Court's ruling.

---

[98] *Contango Operators, Inc. v. United States*, 965 F. Supp. 2d 791, 800 (S.D. Tex. 2013), aff'd sub nom. *Contango Operators, Inc. v. Weeks Marine, Inc.*, 613 Fed. Appx. 281 (5th Cir. 2015).
[99] Dkt. No. 24-1 at 7, ll. 18–23.

Moreover, at no point in Defendant's three initial motions to dismiss, or at the parties' initial pretrial and scheduling conference, did Defendant indicate that a "link" acting as a counter-offer was sent to Plaintiff's representative, who allegedly "accepted" the link by clicking it. Defendant's renewed motion relies primarily on an email from a third party indicating the time and date on which Hinojosa allegedly accessed the link.[100] Defendant received this email on July 12, 2019, four days before the initial pretrial and scheduling conference during which the Court entertained arguments from the parties and denied Defendant's second amended motion to dismiss for *forum non conveniens*.[101]

Thus, it appears Defendant intentionally chose not to provide essential arguments and exhibits to the Court at the time of the conference, and instead filed the instant renewed motion and motion to stay discovery more than one month after the conference. It is this Court's view that Defendant strategically left this information out of its initial arguments to the Court in an attempt to further stall this litigation and provide itself with a *fourth* bite at the apple after failing to brief these issues sufficiently. Considering this alone, the Court finds that justice does not require its reconsideration of Defendant's motion. The Court now turns to Defendant's motion for protective order.

### IV. MOTION FOR PROTECTIVE ORDER

Defendant requests the Court (1) stay discovery in light of Defendant's pending renewed motion to dismiss for *forum non conveniens*; and (2) grant Defendant a protective order shielding it from discovery requests that go beyond that which is relevant to the *forum non conveniens* analysis.[102] Defendant also requests that the Court issue a protective order protecting Defendant from Plaintiff's "Rule 30(b)(6) deposition notice, [which] subjects [Defendant] and its counsel to

---

[100] Dkt. No. 24-2 at 19–20.
[101] *Id.* at 19.
[102] Dkt. No. 26 at 2–4.

an undue burden. . ." after Plaintiff unilaterally scheduled the date and location of the deposition in violation of Rule 30(b)(6).[103]

In light of the Court's denial of the renewed motion to dismiss, the Court **DENIES AS MOOT** Defendant's motion for protective order.[104] The Court now turns to Plaintiff's motion to compel discovery.

### V. MOTION TO COMPEL DISCOVERY

Plaintiff informs the Court that since its denial of Defendant's second amended motion to dismiss for *forum non conveniens*, "[Defendant] simply has refused to produce any documents or answer any interrogatories. Instead, [Defendant] has stalled all discovery by filing its [motion for protective order]."[105] In response, Defendant argues that Plaintiff's discovery requests are overbroad and, in light of the pending motion to dismiss for *forum non conveniens*, discovery should be limited to information relevant to the *forum non conveniens* analysis.[106]

The Court agrees with Plaintiff that it certainly appears to have been Defendant's intention in this case to unnecessarily stall discovery. At the initial pretrial and scheduling conference, the Court set a scheduling order in this case delineating the parties' discovery deadlines,[107] which Defendant has disregarded completely in light of its own view of the posture of this case. Nothing in the Federal Rules of Civil Procedure or this Court's Orders authorizes the position that Defendant has taken. While the Court appreciates the fact that the motion for protective order has been pending for some time, the mere filing of a motion does not grant the relief sought. Furthermore, beyond its position that discovery should be limited to issues of *forum non conveniens*, Defendant has not shown that the requested discovery is not relevant.

---

[103] *Id.* at 4–6.
[104] Dkt. No. 26.
[105] Dkt. No. 31 at 1.
[106] Dkt. No. 32 at 2–3.
[107] Minute entry dated July 16, 2019; *see also* Dkt. No. 18.

Accordingly, the Court **GRANTS** Plaintiff's motion to compel discovery[108] and hereby **ORDERS** Defendant to respond to Plaintiff's written discovery requests within **15 days** of this Order. The Court further **ORDERS** that within **45 days** of this Order, Defendant produce a corporate representative to appear for a deposition in Hidalgo County, Texas, or on a date and a location otherwise agreed to by the parties.

## VI. Motion for Extension of Time

Plaintiff requests an extension of time as to all of the parties' deadlines in light of Defendant's refusal to participate in discovery.[109] The Court finds that Plaintiff provides good cause for this request. Thus, the Court **GRANTS** Plaintiff's motion[110] and hereby **EXTENDS** Plaintiff's expert designation deadline from February 8, 2020 to **April 30, 2020**; Defendant's expert designation deadline from March 24, 2020 to **May 29, 2020**; the parties' discovery deadline from May 29, 2020 to **July 28, 2020**, the pretrial motions deadline from June 12, 2020 to **August 11, 2020**; the joint pretrial order deadline from August 11, 2020 to **October 12, 2020**; and the parties' final pretrial conference from September 21, 2020 to **November 9, 2020 at 9:00 a.m.**

## VII. Holding

For the aforementioned reasons, the Court hereby **DENIES** Defendant's renewed motion for *forum non conveniens*[111] and **DENIES AS MOOT** Defendant's motion for protective order.[112] The Court further **GRANTS** Plaintiff's motion to compel discovery[113] and **ORDERS** Defendant to respond to Plaintiff's written discovery requests within **15 days** of this Order. The

---

[108] Dkt. No. 31.
[109] Dkt. No. 34.
[110] *Id.*
[111] Dkt. No. 24.
[112] Dkt. No. 26.
[113] Dkt. No. 31.

Court further **ORDERS** that within **45 days** of this Order, Defendant produce a corporate representative to appear for a deposition in Hidalgo County, Texas, or on a date and a location otherwise agreed to by the parties.

The Court also **GRANTS** Plaintiff's motion for extension of time.[114] The Court hereby **EXTENDS** Plaintiff's expert designation deadline from February 8, 2020 to **April 30, 2020**; Defendant's expert designation deadline from March 24, 2020 to **May 29, 2020**; the parties' discovery deadline from May 29, 2020 to **July 28, 2020**, the pretrial motions deadline from June 12, 2020 to **August 11, 2020**; the joint pretrial order deadline from August 11, 2020 to **October 12, 2020**; and the parties' final pretrial conference from September 21, 2020 to **November 9, 2020 at 9:00 a.m.**

IT IS SO ORDERED.

DONE at McAllen, Texas, this 9th day of March, 2020.

_____
Micaela Alvarez
United States District Judge

---

[114] Dkt. No. 34.